1

2

3

4

5

6

7

8

9               IN THE UNITED STATES DISTRICT COURT

10                 FOR THE DISTRICT OF OREGON

11                     PORTLAND DIVISION

12  BRENDA D. CHURCH, fka Brenda  )
    D. Slavin,                    )
13                                )
                      Plaintiff,  )
14                                )    No.  CV-10-1057-HU
         v.                       )
15                                )
    ONEWEST BANK FSB, a Federal   )
16  Savings Bank, dba IndyMac     )    FINDINGS & RECOMMENDATION
    Bank,                         )
17                                )
                      Defendant.  )
18  _____)

19  Howard M. Levine
    James F. Marron
20  SUSSMAN SHANK LLP
    1000 S.W. Broadway, Suite 1400
21  Portland, Oregon 97205-3089

22       Attorneys for Plaintiff

23  Christopher J. Kayser
    William L. Larkins, Jr.
24  LARKINS VACURA LLP
    621 S.W. Morrison Street, Suite 1450
25  Portland, Oregon 97205

26       Attorneys for Defendant

27  HUBEL, Magistrate Judge:

28       Plaintiff Brenda Church brings this debt collection action

    1 - FINDINGS & RECOMMENDATION

1 against defendant OneWest Bank, FSB.  Defendant moves to dismiss

2 the action, contending that plaintiff's claims are preempted and/or

3 exclusively reserved for the Bankruptcy Court.  Defendant

4 alternatively requests that the action be stayed.  I recommend that

5 the motion to dismiss be denied except as to the claim brought

6 under 15 U.S.C. § 1692e(2)(A).  I further recommend that the

7 alternative motion to stay be denied.

8                          BACKGROUND

9    The facts are as alleged in the Complaint.  In 1998, plaintiff

10 executed a promissory note and security agreement in favor of

11 defendant, in order to finance her purchase of a manufactured home.

12 Compl. at ¶ 5; Exh. 1 to Compl.  The residence was encumbered by a

13 lien, which was recorded with the State of Oregon Department of

14 Consumer and Business Services in a statement of "Status of

15 Manufactured Structure Ownership." Compl. at ¶ 6; Exh. 2 to Compl.

16    In August 2005, plaintiff filed a Chapter 13 bankruptcy

17 proceeding.  Compl. at ¶ 13; see Exh. 12 to Compl. (July 26, 2010

18 letter from plaintiff's bankruptcy attorney to defendant reciting

19 history of Chapter 13 filing by plaintiff).  On November 30, 2005,

20 plaintiff filed a Second Modified Chapter 13 Plan ("the Plan"),

21 pursuant to which defendant's lien was valued at $50,600.  Exh. 12

22 to Compl.  The Plan provided for a post-confirmation interest rate

23 and a series of periodic payments.  Id.

24    On December 27, 2006, plaintiff's bankruptcy counsel filed a

25 secured Proof of Claim in the amount of $50,600 on behalf of

26 defendant.  Id.  The claim reflected the value of the home as

27 determined by the Plan.  Id.  The Chapter 13 Trustee, Brian Lynch,

28 made payments to defendant as required by the Plan, with the final

2 - FINDINGS & RECOMMENDATION

1  payment made on October 30, 2009.  Id.

2      On or about December 3, 2009, defendant mailed plaintiff a

3  letter notifying plaintiff that

4      "IndyMac Mortgage Service, a division of OneWest Bank
       FSB, is currently servicing your loan on behalf of
5      securitization trust MHD 1998-2, BANK OF NEW YORK, as
       Trustee/Master Servicer and is sending you this important
6      notice as required by federal law.  As of the date of
       this letter, you owe a balance of $24,246.09."
7
   Compl. at ¶ 8 (quoting December 3, 2009 letter attached as Exhibit
8
   3 to Complaint).
9
       On December 28, 2009, plaintiff responded to defendant's
10
   December 3, 2009 letter.  Compl. at ¶ 9; Exh. 4 to Compl.  There,
11
   plaintiff stated:
12
       Please be advised that I am in Chapter 13 Bankruptcy,
13     Case #305-40414-RLD13, and as of this date, I am unable
       to verify the balance due.  The Chapter 13 Trustee has
14     been making the home mortgage payments for the past
       several years.  By copy of this letter to the Trustee, I
15     respectfully request that said Trustee respond to this
       letter as appropriate.  In addition, I request that
16     IndyMac Mortgage Services allow additional time for
       Trustee's response, beyond the thirty day period after
17     receipt of your notice.

18 Exh. 4 to Compl.

19     On December 31, 2009, the Bankruptcy Court entered a "Chapter

20 13 Order Re: Discharge of Debtor(s) and Order Discharging Trustee

21 and Closing Case."  Exh. 12 to Compl.  On January 4, 2010, Lynch,

22 the Chapter 13 Trustee, sent a letter to IndyMac confirming the

23 payments and provided IndyMac with documentation concerning the

24 Chapter 13 case together with a complete disbursement history

25 showing the date and the amount of each payment.  Id.

26     Nonetheless, defendant continued to take actions to collect

27 the debt from plaintiff.  Compl. at ¶ 10.  These actions included

28 continued mailings showing amounts due, threatening to foreclose on

   3 - FINDINGS & RECOMMENDATION

1  the residence, and leaving a note on her doorknob requesting she

2  contact defendant for "programs available to homeowners like you."

3  Id.; see also Exh. 11 to Compl. (copy of notice left on doorknob).

4      Plaintiff's bankruptcy counsel, who represents her in this

5  action as well, wrote to defendant to demand that defendant stop

6  its efforts to collect the debt.  Compl. at ¶ 11; Exh. 12 to Compl.

7  After defendant received that letter, defendant repeatedly called,

8  and as of the date the Complaint in this case was filed, continues

9  to call, plaintiff regarding the alleged debt.  Compl. at ¶ 12.

10     On August 31, 2010, plaintiff filed a complaint in the

11 Bankruptcy Court seeking relief due to defendant's alleged

12 violation of the Discharge Order and Automatic Stay.  Id. at ¶ 14.[1]

13                          DISCUSSION

14     Based on the facts recited above, plaintiff brings two claims:

15 a claim under the Fair Debt Collection Practices Act, 15 U.S.C. §§

16 1692 - 1692p (FDCPA), and a claim under Oregon's corollary statute,

17 the Oregon Unfair Debt Collection Practices Act, Oregon Revised

18 Statute §§ (O.R.S.) 646.639 - 646.643 (OUDCPA).  In support of the

19 FDCPA claim, plaintiff contends defendant violated the statute in

20 the following ways:

21     (1) contacting plaintiff at an unusual time or place, or at a

22

23     [1] Although plaintiff did not attach a copy of the
   bankruptcy filing to the Complaint in this case, she has attached
24 a copy of it to her response to the motion to dismiss.  It is
   properly considered in resolving this motion.  Coto Settlement v.
25 Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010) (on a motion to
   dismiss, court may consider materials incorporated into the
26 complaint including when contents of document are alleged in a
   complaint, the document's authenticity is not in question, and
27 there are no disputed issues as to the document's relevance).

28

4 - FINDINGS & RECOMMENDATION

1  time or place known or which should be known to be inconvenient to

2  plaintiff, in violation of 15 U.S.C. § 1692c(a)(1);

3      (2) contacting plaintiff directly after being advised that she

4  was represented by counsel, in violation of 15 U.S.C. §

5  1692c(a)(2);

6      (3) contacting plaintiff after being notified to cease further

7  communications, in violation of 15 U.S.C § 1692c(c);

8      (4) falsely representing the character, amount, or legal

9  status of the alleged debt, in violation of 15 U.S.C. § 1692e(2);

10     (5) failing to disclose in the initial written communication

11  with plaintiff that the debt collector was trying to collect a debt

12  and that any information would be used for that purpose, in

13  violation of 15 U.S.C. § 1692e(11); and

14     (6)  failing to issue an appropriate validation notice, in

15  violation of 15 U.S.C. § 1692g.

16  Compl. at ¶ 19.

17     In support of her OUDCPA claim, plaintiff contends that

18  defendant violated that statute by

19     (1) communicating with plaintiff repeatedly or continuously at

20  times known to be inconvenient to that person with intent to harass

21  or annoy the debtor, in violation of O.R.S. 646.639(2)(e), and

22     (2) communicating with plaintiff without clearly identifying

23  the name of the debt collector, the name of the person, if any, for

24  whom the debt collector was attempting to collect the debt, and the

25  debt collector's business address on all initial communications, in

26  violation of O.R.S. 646.639(2)(h).

27  Compl. at ¶ 26.

28     Defendant contends that this action must be dismissed because

5 - FINDINGS & RECOMMENDATION

1  the Bankruptcy Code provides the exclusive remedy for claims

2  relating to a discharged debt and thus, the Bankruptcy Code

3  preempts plaintiff's claims.[2]

4       Ninth Circuit and Ninth Circuit Bankruptcy Appellate Panel

5  (BAP) cases make clear that the Bankruptcy Code "preempts

6  substantive state law claims and remedies for alleged misconduct

7  that occurs in connection with a bankruptcy case." Chaussee, 399

8  B.R. at 232.   In Chaussee, the debtor had previously filed a

9  Chapter 13 bankruptcy and had a repayment plan confirmed.

10 Nonetheless, a claimant later filed two unsecured proofs of claim

11 in the debtor's bankruptcy case.   The debtor then filed an

12 adversary proceeding complaint against the claimant in the

13 bankruptcy case, alleging that the claimant violated the FDCPA and

14 Washington's Consumer Protection Act (CPA), by filing the two

15 proofs of claim when the debtor did not owe the debts and which she

16 contended were barred by the statute of limitations.

17      The claimant moved to dismiss the FDCPA and CPT claims,

18 contending that the Bankruptcy Code preempted the CPA claim and

19 precluded the FDCPA claim.   The bankruptcy court denied the motion,

20

21      [2]  The "preemption doctrine has its roots in the Supremacy
   Clause of the United States Constitution . . . and is implicated
22 only when there is a conflict between federal and state
   regulations. . .   Under this doctrine, state laws interfering
23 with, or contrary to, federal law are preempted." In re
   Chaussee, 399 B.R. 225, 230 (9th Cir. BAP 2008) (footnote and
24 citation omitted).   Thus, technically, defendant's argument is
   properly termed one of "preemption" to the extent it is addressed
25 to the OUDCPA claim, but it is considered a "preclusion" argument
   to the extent it is addressed to a federal law. See Walls v.
26 Wells Fargo Bank, N.A., 276 F.2d 502, 511 (9th Cir. 2002)
   (referring to "preclusion" of FDCPA claim).   The argument, while
27 carrying a slightly different moniker, is essentially the same.

28

but the Ninth Circuit BAP reversed, concluding that the debtor could not bring the separate claims.  The BAP discussed earlier Ninth Circuit cases and noted that in each one, "the factual predicate for the state law claim hinged upon the alleged wrongful conduct of a party in a bankruptcy case. . . . [T]he prebankruptcy relationship of the parties as debtor and creditor was of no discernable import to the courts in reaching their decisions." Id. at 233 (citing In re Miles, 430 F.3d 1083 (9th Cir. 2005) (wrongful conduct targeted the creditor's alleged bad faith filing of an involuntary petition under Bankruptcy Code § 303 which provides express remedies in the event the bankruptcy court determines that the petition was wrongfully filed and dismissed); In re Bassett, 255 B.R. 747 (9th Cir. BAP 2000) (alleged wrongful conduct was based upon a defective reaffirmation agreement), rev'd on other grounds, 285 F.3d 882 (9th Cir. 2002); MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910 (9th Cir. 1996) (alleged wrongful conduct arose in connection with the bankruptcy claims process)).

Similar to the earlier cases it cited, the Chaussee court explained that, in the case before it, the "factual foundation of Debtor's allegations is, solely, that in filing of proofs of claim in the bankruptcy court, [the claimant] violated the state consumer protection laws." Id. As in the earlier cases, the Bankruptcy Code and its attendant implementing rules provided the exclusive remedies should the creditor's conduct be determined to be wrongful. Id. The court concluded that

> [c]onsistent with the teachings of our circuit's case
> law, we fear that the purposes of and policies of the
> [Bankruptcy] Code, together with the need for its uniform
> application, may be undercut if debtors can pursue state
> law claims under the CPA against those accused of filing

7 - FINDINGS & RECOMMENDATION

1    an improper proof of claim.

2  Id. at 234.

3      The Chaussee court then rendered the same conclusion as to the

4  FDCPA claim.  The court noted that the debtor relied on 15 U.S.C.

5  § 1692f(1) in support of her FDCPA claim, which prohibits the

6  collection of any amount unless the amount is expressly authorized

7  by an agreement creating the debt or permitted by law.  Id. at 234-

8  35.  The court discussed another Ninth Circuit case, Walls, which

9  involved an FDCPA claim based upon an alleged discharge violation.

10 Id. at 235-36.  The court found Walls analogous and concluded that

11 "where the [Bankruptcy] Code and [Bankruptcy] Rules provide a

12 remedy for acts taken in violation of their terms, debtors may not

13 resort to other state and federal remedies to redress their claims

14 lest the congressional scheme behind the bankruptcy laws and their

15 enforcement be frustrated."  Id. at 236-37.  The court noted that

16 unlike a non-binding and contrary case decided by the Seventh

17 Circuit where the debtor's FDCPA claim against the creditor was

18 based upon the creditor's actions taken after conclusion of the

19 bankruptcy case, the FDCPA violation in the instant case targeted

20 the act of filing a proof of claim in the actual pending bankruptcy

21 case.  Id. at 237 (citing Randolph v. IMBS, Inc., 368 F.3d 726 (7th

22 Cir. 2004).  Thus, "[a]pplication of the FDCPA to this conduct

23 would certainly conflict with the [Bankruptcy] Code."  Id.

24     In the Ninth Circuit, Chaussee makes clear that a bankruptcy

25 debtor may not bring state or federal consumer protection claims as

26 part of an adversary proceeding in the bankruptcy case to the

27 extent the resolution of those claims is intertwined with

28 procedures contemplated by the Bankruptcy Code and Rules.  And,

8 - FINDINGS & RECOMMENDATION

1  Walls makes equally clear that even if the consumer protection
2  claims are brought in a separately filed action outside the
3  bankruptcy court, the same concerns are triggered.

4      In Walls, the plaintiff had filed a Chapter 7 bankruptcy in
5  1997 with a debt to Wells Fargo discharged in January 1998.  276
6  F.3d at 505.  Nonetheless, through a "ride-through" arrangement,
7  the plaintiff continued to make payments on the debt, both before
8  and after the debt was discharged.  Id.  Under such an arrangement,
9  Wells Fargo retained its lien on the property.  Id.  The plaintiff
10 stopped making payments and the bank foreclosed on the property in
11 December 1998.  Id.  The plaintiff then filed an action in federal
12 district court in which she contended that Wells Fargo violated 11
13 U.S.C. § 524 which provides that discharge under Title 11 of the
14 Bankruptcy Code operates as an injunction against collecting debt
15 as a personal liability of the debtor.  She contended that the
16 bank's continued solicitation and collection of monthly payments
17 was prohibited by section 524.  Id.  She further contended that the
18 activity was an "unfair and unconscionable means of collecting a
19 debt under the FDCPA."  Id.

20     The district court granted Wells Fargo's motion to dismiss the
21 action and the Ninth Circuit affirmed.  The court first held that
22 there was no private right of action under section 524.  Id. at
23 507-10.  The court noted that under 11 U.S.C. § 105(a), civil
24 contempt remedies allowed an aggrieved debtor to obtain
25 compensatory damages, attorney's fees, and the offending creditor's
26 compliance with the discharge injunction.  Id. at 507.  No further
27 remedy was necessary.  Id.  The court explained that for the court
28 to imply a private right of action under section 524 would

9 - FINDINGS & RECOMMENDATION

1  "undercut the complex, detailed, and comprehensive provisions of

2  the lengthy Bankruptcy Code . .  because it <u>has</u> an enforcement

3  mechanism for violations of § 524 via the contempt remedies

4  available under § 105(a)."  <u>Id.</u> at 509 (internal quotation

5  omitted).

6  Next, the court addressed plaintiff's FDCPA claim which was

7  based on section 1692f(1), prohibiting the collection of any amount

8  unless the amount is expressly authorized by the agreement creating

9  the debt or permitted by law.  <u>Id.</u> at 510.  This is the same FDCPA

10 provision that was alleged in <u>Chaussee</u>.  The plaintiff in <u>Walls</u>

11 argued that the bank engaged in unfair and unconscionable

12 collection practices forbidden by the FDCPA by trying to collect

13 her debt in violation of the discharge injunction.  <u>Id.</u>  She argued

14 that this was outside the bankruptcy proceeding because the

15 bankruptcy was over and the FDCPA was needed to protect a debtor

16 who has been discharged.  <u>Id.</u>

17 The court rejected the plaintiff's argument.  It explained:

18     There is no escaping that Walls's FDCPA claim is based on
       an alleged violation of § 524.  As the district court
19     noted, this necessarily entails bankruptcy-laden
       determinations.  Were her payments "voluntary" under §
20     524(f)?  Was she required to enter into a reaffirmation
       agreement pursuant to § 524(c)?  How much of a free ride
21     did her "ride through" under <u>Parker</u> afford?  The
       Bankruptcy Code provides its own remedy for violating §
22     524, civil contempt under § 105.  To permit a
       simultaneous claim under the FDCPA would allow through
23     the back door what Walls cannot accomplish through the
       front door - a private right of action.  This would
24     circumvent the remedial scheme of the Code under which
       Congress struck a balance between the interests of
25     debtors and creditors by permitting (and limiting)
       debtors' remedies for violating the discharge injunction
26     to contempt. . . . Nothing in either Act persuades us
       that Congress intended to allow debtors to bypass the
27     Code's remedial scheme when it enacted the FDCPA. While
       the FDCPA's purpose is to avoid bankruptcy, if bankruptcy
28     nevertheless occurs, the debtor's protection and remedy

10 - FINDINGS & RECOMMENDATION

1    remain under the Bankruptcy Code.

2    Id. (citation omitted).

3    Under Walls, consumer protection claims which "necessarily

4    entail bankruptcy-laden determinations" are preempted or precluded,

5    even when they are brought in a separate civil action and even when

6    the bankruptcy is concluded.  When Walls and Chaussee are read

7    together, it is clear that state or federal consumer protection

8    type claims cannot be maintained, whether as part of a bankruptcy

9    proceeding or post-bankruptcy civil action, to the extent that

10   resolution   of   those   claims   requires   interpretation   of   and

11   determination under bankruptcy laws and rules.

12   Two post-Walls cases, one from this Court, indicate that there

13   are, however, consumer protection claims which may still go forth,

14   without implicating the concerns raised by Walls, Chaussee, and the

15   cases cited therein.  In Thomas v. U.S. Bank., N.A., No. CV-05-

16   1725-MO, 2007 WL 764312 (D. Or. Mar. 8, 2007), the plaintiffs

17   brought claims in federal district court under the federal Fair

18   Credit Reporting Act (FCRA), Oregon's Unfair Trade Practices Act

19   (UTPA), and OUDCPA.  The claims were based on the defendant's

20   having continued to report a VISA account debt to credit reporting

21   agencies when that debt had been discharged in the plaintiffs'

22   preceding Chapter 13 bankruptcy.   On summary judgment, the

23   defendant argued that the OUDCPA claim was preempted by the

24   Bankruptcy Code under Walls.  Id. at *9.  Judge Mosman rejected the

25   defendant's argument.

26   Judge Mosman noted that the specific OUDCPA provision relied

27   upon by the plaintiffs was O.R.S. 646.639(2)(k) which prohibits the

28   enforcement of a right or remedy with knowledge or reason to know

11 - FINDINGS & RECOMMENDATION

1  that the right or remedy does not exist. Id. He then explained

2  that with that OUDCPA claim, the plaintiffs were "not directly

3  alleging a violation of the bankruptcy discharge order." Id. He

4  further explained that

5      [i]n their first two complaints, their allegations on
       this point focused on the bank's attempt to collect a
6      debt previously discharged in bankruptcy. However,
       apparently recognizing the preemption problem, in their
7      second amended complaint the [plaintiffs] excluded all
       reference to their bankruptcy. Likewise, in response to
8      the bank's motion for summary judgment, the [plaintiffs]
       argue the bank violated the [O]UDCPA by attempting to
9      collect an obsolete debt.

10         The bank argues the [plaintiffs] are trying to avoid
       preemption by putting a new label on the same facts. I
11     disagree. Though the facts are similar, the basis of
       liability the [plaintiffs] are now focusing on has
12     nothing to do with their bankruptcy discharge. They have
       alleged a completely different legal theory as to why the
13     bank attempted to enforce a remedy it knew it had no
       right to enforce. This difference is evidenced by the
14     fact that, unlike in Walls, resolving the [plaintiffs']
       obsolescence argument does not "necessarily entail []
15     bankruptcy-laden determinations." Walls, 276 F.3d at
       510. Thus, allowing the [plaintiffs] to proceed with
16     this claim will not "circumvent the remedial scheme of
       the [Bankruptcy] Code," id., and bankruptcy preemption
17     does not apply here.

18  Id.

19      In a more recent case from the Southern District of

20  California, the plaintiff alleged, in a civil action in federal

21  district court, that the defendants, through their attempts to

22  collect on a debt that was discharged in bankruptcy, violated

23  various provisions of the FDCPA and California's analogous debt

24  collection practices statute. Goad v. MCT Group, No. 09cv1321 BTM

25  (POR), 2010 WL 1407257 (S.D. Cal. Apr. 6, 2010). In its first

26  decision in the case, the court, following Walls, granted the

27  defendants' motion for judgment on the pleadings, holding that the

28  FDCPA and state claims were precluded by the Bankruptcy Code

12 - FINDINGS & RECOMMENDATION

1  because the plaintiff's claims were premised on the defendants'

2  violation of the discharge injunction.  Id. at *1.  In that

3  decision, the court granted the plaintiff leave to file an amended

4  complaint "to the extent that Plaintiff can plead violations of the

5  FDCPA and [the state statute] that are independent of any violation

6  of the discharge injunction."  Id.

7      In the First Amended Complaint, the plaintiff alleged that

8  defendants violated three provisions of the FDCPA:  (1)  section

9  1692f prohibiting use of unfair or unconscionable means to collect

10 or attempt to collect a debt; (2) section 1692e(5) prohibiting debt

11 collectors from threatening to take any action that cannot be

12 legally taken, and (3) section 1692e(10) prohibiting the use of any

13 false representation or deceptive means to collect a debt.  Id.

14     Once again, the defendants moved for judgment on the pleadings

15 arguing that the plaintiff's claims were premised on defendants'

16 attempts to collect a debt that was discharged by the Bankruptcy

17 Court.  Id. at *2.  Once again, the court agreed.  Id.

18     The court explained that although the plaintiff had eliminated

19 most of the original complaint's references to the 2007 discharge

20 of plaintiff's debt in bankruptcy, it was still clear that the

21 basis of the plaintiff's claim was that the defendants did not have

22 the legal authority to collect on the debt and the debt was not

23 actually owed because the debt had been discharged in bankruptcy.

24 Id.  The court noted that nowhere did the plaintiff's First Amended

25 Complaint or the plaintiff's opposition papers contend that the

26 debt was not owed for some other reason.  Id.

27     The court stated that "[f]air debt collection claims that

28 hinge upon whether the debt at issue was discharged or not are

13 - FINDINGS & RECOMMENDATION

1   precluded."  Id.  Discussing cases from other jurisdictions, the

2   court explained that claims were precluded when the court would

3   "have to decide whether the debt on the mortgage note had been

4   discharged in bankruptcy" which would inappropriately require

5   reference to the Bankruptcy Code and "interject" the court into

6   "bankruptcy laden questions."  Id.  In the case before it, the

7   court stated that the claims as presented in the plaintiff's First

8   Amended Complaint "clearly depend on the legal status of

9   Plaintiff's debt and would require the Court to determine whether

10  the debt was discharged or not."  Id. at *3.  Thus, the claims were

11  precluded.  Id.

12       Finally, the court explained that nonetheless, not all fair

13  debt collection practices claims are precluded because the debt at

14  issue was discharged in bankruptcy.  Id.  "Claims that are

15  independent of the bankruptcy discharge-i.e., claims that do not

16  turn upon the discharged nature of the debt-would not interfere

17  with the remedial scheme of the Bankruptcy Code."  Id.  As an

18  example, the court noted that even if a debt were discharged, "the

19  debtor could pursue claims against a debt collector who harassed

20  the debtor my making incessant telephone calls, threatened or

21  intimidated the debtor, or lied about matters (other than whether

22  the debt is owed)."  Id.  These types of claims would not be

23  precluded under the reasoning of Walls.  Id.

24       In the instant case, defendant argues that Walls requires

25  preemption of all of plaintiff's claims.  Plaintiff contends that,

26  as indicated in Thomas and Goad, her claims should not be preempted

27  because resolving them requires no "bankruptcy-laden" decisions.

28       I agree with plaintiff, with one exception.  Plaintiff alleges

14 - FINDINGS & RECOMMENDATION

1  several violations of the FDCPA, and two OUDCPA violations.  Only

2  one of these allegations requires a determination that the debt at

3  issue in defendant's communications with plaintiff, was not valid.

4  Under 15 U.S.C. § 1692e(2), it is a violation of the FDCPA to

5  falsely represent the character, amount, or legal status of the

6  alleged debt.  Here, resolution of this claim depends on the legal

7  status of plaintiff's debt, which is determined only by reference

8  to the Bankruptcy Code.  To analyze if defendant's actions

9  constituted a false representation of the character, amount, or

10 legal status of the debt requires a determination of whether the

11 debt was properly discharged in plaintiff's Chapter 13 bankruptcy

12 proceeding, and whether the post-bankruptcy collection efforts

13 violated section 524's discharge injunction.  Because this

14 determination requires interpretation of the Bankruptcy Code, it is

15 precluded.  E.g., Necci v. Universal Fidelity Corp., 297 B.R. 376,

16 377-78, 381 (E.D.N.Y. 2003) (claim under section 1692e(2)(A)

17 precluded).

18    However, none of the remaining FDCPA or OUDCPA claims depend

19 on the Bankruptcy Code.  As the Goad court explained, claims

20 independent of the bankruptcy discharge should not be preempted or

21 precluded because they do not interfere with the "remedial scheme

22 of the Bankruptcy Code."  Goad, 2010 WL 1407257, at *3.  One

23 example of such claims listed by the court in Goad includes one of

24 the claims plaintiff brings here:  harassing the debtor by making

25 incessant phone calls.  Aside from the 1692e(2) claim, plaintiff's

26 remaining claims are similar.  The validity of these claims does

27 not rise or fall on the validity of the underlying debt.

28    Defendant suggests that the test is whether the debt

15 - FINDINGS & RECOMMENDATION

1  collection claims "relate" to the bankruptcy claims.  I disagree.

2  Under <u>Walls</u>, the correct question is whether resolution of the debt

3  collection claims involves "bankruptcy-laden determinations."

4  Here, other than the claim brought under section 1692e(2), the

5  claims are independent of the Bankruptcy Code and may proceed

6  separately in this case.

7      I further recommend that defendant's alternative motion to

8  stay be denied.  Precisely because the remaining claims in this

9  case do not involve the validity of the debt at issue in the

10 ongoing bankruptcy case, there is no need to stay this action

11 pending the February 2011 trial scheduled in the bankruptcy case.

12                          CONCLUSION

13     I recommend that the motion to dismiss [9] be granted in part

14 and denied in part as follows:  the motion should be denied except

15 as to plaintiff's claim under 15 U.S.C. § 1692e(2)(A).  I further

16 recommend that the alternative motion to stay [9] be denied.

17                       SCHEDULING ORDER

18     The Findings and Recommendation will be referred to a district

19 judge.  Objections, if any, are due February 7, 2011, If no

20 objections are filed, then the Findings and Recommendation will go

21 under advisement on that date.

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

16 - FINDINGS & RECOMMENDATION

1    If objections are filed, then a response is due February 24,

2  2011.   When the response is due or filed, whichever date is

3  earlier, the Findings and Recommendation will go under advisement.

4    IT IS SO ORDERED.

5              Dated this 18th  day of January, 2011.

6

7

8                              /s/ Dennis J. Hubel

9                              _____

10                             Dennis James Hubel
                               United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17 - FINDINGS & RECOMMENDATION